GEORGE W. VAIL, PLAINTIFF, v. THE PENNSYLVANIA
RAILROAD COMPANY, DEFENDANT.

Submitted October 13, 1926—Decided February 24, 1927.

1. The essential element in an action for false imprisonment is
the constraint of the person, and if the words or conduct of the
defendant, or his duly authorized agents, are such as to induce a
reasonable apprehension of force, and the means of coercion are
at hand, a person may be as effectually restrained and deprived
of liberty as by prison bars; and unless it is clear that there is
no reasonable apprehension of force, it is a jury question whether
the submission of the plaintiff was a voluntary act, or was
brought about by fear that force would be used.
2. A defamatory publication which is untrue in fact, is a publica-
tion without just cause or excuse, and is, in a legal sense,
malicious, and, therefore, actionable (unless privileged), not-
withstanding that the author of it acted in good faith, and with
an honest belief in the truth of the matters contained in it.
3. To render a libellous letter a privileged communication it must
not only be *bona fide*, but it must also be with relation to a
subject-matter in which the party communicating has an interest,
or in reference to which he has a duty, and to a person having
a corresponding interest or duty.
4. In an action for libel, the jury, in estimating compensatory dam-
ages, may properly take into consideration the mental anguish
and suffering of the plaintiff, caused by the publication of the
libel.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-
CHARD and MINTURN.

For the rule, *Wall, Haight, Carey & Hartpence.*

*Contra, Richard J. Mackey.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff instituted the
present suit to recover from the defendant damages for false
imprisonment and also for libel. The trial of the cause re-
sulted in a verdict in his favor, the jury awarding him $250

on the count for false imprisonment and $500 on the count for libel.

The following was the plaintiff's case: On November 26th, 1924, he was a passenger on the defendant's train running from New York to Newark, having with him a young lady friend. He had purchased a round-trip ticket a week earlier at Newark, good from that city to New York and return, and upon the day in question was using the return half thereof, the time limit of which had not expired. His ticket was collected by the conductor, who received it without comment, and proceeded to collect other fares. Shortly afterward the conductor returned, threw a ticket in his lap, insisted that it had expired, and demanded payment of thirty-one cents, that being the fare for the trip from New York to Newark. The plaintiff refused to pay, insisting that the ticket which he had given had not yet expired and that the one which the conductor threw into his lap was not that which he had given him. When the train arrived at Newark the conductor called a police officer employed by the company, and who was in uniform, and told him that the plaintiff refused to pay his fare. Upon receiving this information the officer compelled the plaintiff to go with him to the ticket receiver's booth in the station (whether in doing so he used force is a matter in dispute), and the ticket receiver, in the presence of the conductor and the policeman, after hearing the story of the former, then insisted that the plaintiff should pay the fare. The latter still refused to do this, claiming that he had already done so. He gave his name and the address of his employer, the Air Reduction Company, of Elizabeth, and then, after some fifteen or twenty minutes, was allowed by the officer to go. These facts form the basis of the count for false imprisonment, and they were not disputed by the defendant, except in the following respects: *First,* that the plaintiff had tendered a ticket the time limit of which had expired; and *second,* that he voluntarily accompanied the police officer to the ticket receiver's booth.

Some months after this occurrence the assistant treasurer of the defendant company wrote a letter to the plaintiff's employer, the material part of which is as follows: "Gentlemen:

Herewith I enclose copy of bill No. 397/6131, dated 1/12/25, for $0.31, against Mr. G. W. Vail, who, we understand, is employed by your company, at Elizabethport, N. J., and to whom several communications have been addressed requesting settlement. I quote below notation of our conductor in charge of the train at the time, and shall be greatly obliged if you will, if consistent, kindly take up for us the matter of Mr. Vail, remitting the amount to this office." The notation of the conductor referred to in the letter was a statement that the plaintiff had tendered a return ticket, the time limit of which had previously expired; that he refused to pay fare, and, as a result, was carried without transportation payment from Hudson terminal, New York, to Newark. This letter is the basis upon which the charge of libel is rested, and its sending, and its receipt by the addressee, are admitted by the defendant company.

The contention of the defendant on the return of the present rule is that the verdict rendered by the jury is without legal justification. In other words, that the finding of the jury upon the charge of false imprisonment was contrary to the weight of the evidence, and that the sending of the letter above quoted did not constitute a libel upon the plaintiff.

As to the verdict on the charge of false imprisonment. The jury evidently believed the testimony of the plaintiff and his witness with relation to the conduct of the defendant company's conductor and police officer upon the arrival of the train at Newark; that is, that the plaintiff did not go voluntarily with these two men to the office of the ticket receiver, but because he was compelled to do so by the officer. If the accusation of the conductor was true, the plaintiff was subject to arrest and fine and possible imprisonment. "An act for the prevention of trespassing upon railway trains and railroad property" (*Pamph. L.* 1911, *p.* 659) makes the riding upon a railroad train without the payment of fare a disorderly act, which subjects the offender to arrest and fine, and to imprisonment for failure to pay the fine. Whether or not actual force was used by the officer in compelling plaintiff to go with him to the ticket receiver's booth is immaterial. As was stated in the case of *Hebrew* v. *Pulis,*

73 *N. J. L.* 621, 624, the essential thing in an action of this kind is the constraint of the person, and, if the words or conduct of the parties are such as to induce a reasonable apprehension of force, and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars; and, unless it is clear that there is no reasonable apprehension of force, it is a question for the jury whether the submission was a voluntary act, brought about by fear that force would be used. The finding of the jury upon this point, we think, was justified by the evidence. Whether the constraint was legal or not depended upon the truth of the charge made by the conductor. The jury found against the defendant upon that question, and we think the evidence justified that finding.

The contention of the defendant that the letter written to the employer of the defendant was not libellous, we think, is without merit. By necessary inference, it charged the plaintiff with an unlawful act; that is, the stealing of a ride upon the defendant company's train without paying fare—an act which, if committed, was not only dishonest, but also subjected the plaintiff, as already pointed out, to arrest and fine. If the charge was untrue, it was on its face plainly libellous. A defamatory publication which is untrue in fact is a publication without just cause or excuse, and is, in a legal sense, malicious, and, therefore, actionable (unless privileged), notwithstanding that the author of it acted in good faith, and with an honest belief of the truth of the matters contained in it. *King* v. *Patterson,* 49 *N. J. L.* 417, 419.

It is further argued that, even if the letter was libellous on its face, it was a privileged communication, and that, consequently, as the defendant had reasonable ground to believe the truth of the statements contained therein, there could be no recovery against it. We consider this contention also without substance. In order to be privileged, the communication must not only be *bona fide,* but it must also be with relation to a subject-matter in which the party communicating has an interest, or in reference to which he has a duty, and to a person having a corresponding interest or duty.

*King* v. *Patterson, supra.* In the present case, the plaintiff's employer had absolutely no interest in the question whether its employe owed the defendant company thirty-one cents for unpaid railroad fare. That it was under no duty with relation thereto goes without saying.

Lastly, it is argued that the verdict awarded the plaintiff on the count for libel is punitive in its chaarcter, and that the case did not justify an award of punitive damages. The basis of the assertion that the damages awarded are punitive, as we understand the argument of counsel, is that nominal damages are all that the plaintiff was entitled to receive as compensation for the injury done to him by the publication of the libel, and that, therefore, an award in excess thereof must necessarily be punitive in character. The theory of counsel rests upon a false basis. In an action for libel the jury, in estimating compensatory damages, may properly take into consideration the mental anguish and suffering of the plaintiff caused by the publication of the libel. *Neafie* v. *Hoboken Printing and Publishing Co.,* 75 *N. J. L.* 564. And there is nothing in the present record which would justify us in holding that the award of $500 made by the jury was intended as a punishment of the defendant company rather than as compensation to the plaintiff for the mental suffering naturally resulting from the unfounded charge of dishonesty contained in the letter sent to his employer.

The rule to show cause will be discharged.